# CHARLESTON

### HANNIS DISTILLING COMPANY *v.* COUNTY COURT.

Submitted September 7, 1907. Decided October 29, 1907.

1. PROPERTY—*Title to Personalty.*

    The title to personal property is always presumed to be with the possession thereof. (p. 446.)

2. TAXATION—*Possession of Property—Ownership.*

    The joint custody and control of a bonded warehouse by the Federal store-keeper and the warehouse proprietor, as provided by sections 3271-3275 U. S. Rev. Stat., does not constitute such a change of possession of the liquor stored therein as to destroy the presumption of ownership thereof by the distiller. (p. 446.)

3. SAME—*Evidence of Ownership.*

    In a proceeding before the county court to correct an alleged erroneous assessment, a petitioner who is in possession and control of the property and seeks relief from such assessment on the ground of want of ownership must establish his want of ownership, and title in those for whom he claims to hold the property

in possession, by such legal and sufficient proof as would be required in a contest between him and a claimant of the property. (p. 446.)

4. SAME.
These principles applied to a case in which the petitioner failed to establish by sufficient evidence want of title and ownership in the property assessed against it. (p. 447.)

Error to Circuit Court, Berkeley County.

Action by the Hannis Distilling Company against the Berkeley County Court. Petition dismissed, and judgment affirmed on appeal to the circuit court, and petitioner brings error.

*Affirmed.*

FAULKNER, WALKER & WOODS and P. LEWIS ANDERSON, for plaintiff in error.

H. B. GILKESON and A. B. NOLL, for defendant in error.

MILLER, PRESIDENT:

The Hannis Distilling Company in January, 1906, presented to the county court of Berkeley county a petition praying correction of an assessment against it for 1905 of 30,000 barrels of whiskey, situated on April first of that year in its bonded warehouse at Martinsburg, at $240,000. It is alleged in said petition that of this property 6,312 barrels belonged to petitioner on April 1, 1905; that the balance thereof belonged to owners unknown to the company or its agents, and was not held by it under any mortgage or pledge or in any representative or fiduciary capacity; that the same was merely kept by it in storage for and at the risk of the owners, subject to withdrawal at any time, the title thereto being in the latter and represented by negotiable warehouse receipts, mere delivery of which transfers title to the whiskey described therein; that in fact it does not have the care and custody thereof; that such care and custody is in the United States government through its storekeeper, with a lien for the internal revenue taxes thereon; that the petitioner has no property of the owners of said whiskey out of which it could be reimbursed should it pay the tax so assessed. The petitioner admits that it made no return for taxation of said 6,312 barrels belonging to it on April

1, 1905, and stored in the same warehouse, in control of the same government official. It excuses this omission by the representation that it had repurchased this whiskey in the open market from the owners, and that this fact was unknown to the agent who made the return. This petition is verified by the general manager of the company, who made the original return.

We find printed in the record along with the petition, but without apparent identification, what purports to be an amended or supplemental return by the petitioner of its personal property for the year 1905, addressed to the assessor and sworn to on the same day the petition was presented, returning said 6,312 barrels of whiskey for taxation, containing the representation that the company's ownership thereof on April 1, 1905, was unknown to the agent who made the original report for assessment, but had since been ascertained from the records of the company in Philadelphia. This report does not purport to be made by the agent therein referred to, but by counsel for the petitioner, whose place of business the record shows is not in Philadelphia but in the city of New York, and who in the language of his oath says that "the foregoing is to the best of my knowledge and judgment true in all respects." Is it not possible that the better knowledge and judgment of the officers of this company, whose duty it was to make proper return of its property for taxation, would have disclosed either that it still owned or had purchased in the open market a larger portion or all of said whiskey, or the names of the persons to whom it belonged.

The case was heard in the county court January 9, 1906, upon the petition and the evidence of the assessor and the general manager of the petitioner, and the petition dismissed. Upon an appeal to the circuit court, the judgment of the county court was affirmed.

On the assumption that it was proven in the trial before the county court that 23,688 barrels of the whiskey assessed were not the property of petitioner, the ingenious argument is here made—based on the provisions of the federal statutes relating to bonded warehouses, the legal rights and liabilities of warehouse men and holders of its receipts and the construction placed by counsel upon the statutes of this state respecting

assessment of personal property—that this particular whiskey can not be lawfully assessed to the petitioner, so as to impose upon it payment of taxes on property belonging to others, without means of reimbursement. In the view we take of the case as presented, we are not called upon to challenge the correctness of the conclusion of counsel based upon such assumed premises; for we do not think the record justifies the assumption upon which the argument is based. Section 3271, U. S. Rev. Stat., provides: ''Every distiller shall provide, at his own expense, a warehouse, to be situated on and to constitute a part of his distillery premises, and to be used only for the storage of distilled spirits of his own manufacture until the tax thereon shall have been paid; but no dwelling-house shall be used for such purpose, and no door, window or other opening shall be made or permitted in the walls of such warehouse leading into the distillery or into any other room or building, and such warehouse, when approved by the commissioner of internal revenue, on report of the collector is hereby declared to be a bonded warehouse of the United States, to be known as a distillery warehouse, and shall be under the direction and control of the collector of the district, and in charge of an internal revenue store-keeper assigned thereto by the commissioner.''

Such bonded warehouse is not in the exclusive control of the federal officer, any more than the distillery itself; for sections 3273, 3274 and 3275 provides: ''The store-keeper assigned to any distillery warehouse shall also have charge of the distillery connected therewith. * * * Every distillery warehouse shall be in the joint custody of the store-keeper and the proprieter thereof. * * * No fence or wall of a height greater than five feet shall be erected or maintained around the premises of any distiller, so as to prevent easy and immediate access to such distillery. And every distiller shall furnish to the collector of the district as many keys of the gates and doors of the distillery as may be required by the collector, from time to time, for any revenue officer or other person who may be authorized to make survey or inspection of the premises, or of the contents thereof; and said distillery shall be kept always accessible to any officer or other per-

son having such key." The federal control contemplated by these statutes is for the sole purpose of securing the payment of the internal revenue taxes imposed on manufactured liquor while stored in bonded warehouses. The joint custody of the store-keeper and proprietor is for this purpose and none other. The title of the property is not affected thereby; if so, it could not be passed by warehouse receipts. There is a lien thereon, it is true, for the federal tax, made secure by the federal control of the property provided for.

The title to personal property is always presumed to be with the possession. 2 Schoul. Per. Prop. sections 2, 3, 4. This authority says that the person out of possession of personal estate must usually bring an action and establish his own rights by proof. The federal control, and joint custody of the store-keeper and the proprietor of the distillery warehouse, are not competent to destroy this legal presumption of ownership by the distillery of the whiskey in its bonded warehouse, which under the law is devoted exclusively to whiskey of its own manufacture. As between it and the state authoritities who would subject the property in its possession to taxation, if the distillery denies its ownership and asserts title in another for whom it pretends to hold the same as warehouseman, it should be required to establish its disclaimer of ownership by the same character of proof required in a contest between it and a claimant of the property. In this case the petitioner represents not that it has parted with the possession, but that it has parted with title and holds possession as warehouseman for the alleged holders of its warehouse receipts. This is a question of fact which should be established by competent evidence of the same dignity required in any other legal proceeding. This proceeding has passed the incipient stage of the return by petitioner of its property for assessment, where the report of its proper returning officer might be accepted by the assessor as sufficient. The petitioner is contesting an assessment of its property already made in a lawful manner. It applies to the state for relief therefrom. The burden is upon it to make out its case by legal and sufficient proof, or it will not be entitled to the relief asked. How has it sought to do this?

But two witnesses were examined, the assessor and the general manager of petitioner. The assessor's testimony relates solely to the unsuccessful efforts of himself and the state tax commissioner to get proper information from petitioner of the ownership of this whiskey. He gives no evidence to establish title in any one other than the petitioner. It is true he says he went to the distillery and could get no satisfaction there about it; and in his examination by counsel for the petitioner he was called upon to produce, and did produce, a self-serving letter from petitioner's counsel in New York, dated July 8, 1905, (in reply to a letter of his of July 5th), in which it is stated that "the Hannis Distilling Company does not know the names of the owners of the whiskey in its said warehouse and has no means of ascertaining the names or whereabouts of such owners." This is the same counsel who on the day the case was heard before the county court verified the supplemental report of the petitioner to the assessor that 6,312 barrels of the whiskey did belong to his client on April 1, 1905. His letter of July 8th was a solemn affirmance, not of his knowledge and judgment respecting the same, as was his affidavit attached to said supplemental report, but of the fact that the company did not know the names of the owners of the whiskey at the time he wrote that letter. This counsel was present at the hearing before the county court. If he was the proper returning officer and was possessed of the requisite knowledge to make return of the property of petitioner for taxation, why was he not sworn to give evidence before the court?

What effect shall be given to the evidence of the general manager of the petitioner? When applied to by the assessor, this general manager could give him no satisfaction. He had pretended to make a return of petitioner's property for taxation for the year 1905, but he omitted to include any of the whiskey in bond; and the petitioner's counsel, not its general manager, excuses the latter's omission on the ground that, at the time of making said return, he did not know of the ownership by his company of the whiskey thus omitted. It was the duty of the petitioner to give the assessor proper information. The testimony of the general manager before the county court was of little more consequence than his

return to the assessor. His testimony did not relate particularly to any of the whiskey in controversy. He made no positive statement that this particular whiskey did not belong to the petitioner. The substance of his testimony related solely to what he says was the usual business method of selling whiskey by his company. He says: "We make whiskey on orders, and the main office sends us each month a statement of what they want manufactured and for whom; then the certificates are made out and transmitted by mail to the Philadelphia office, and that is all we have to do with it. We don't keep the accounts here; we don't keep any books here; except we merely act as a branch." Respecting the warehouse receipts, he says: "We issue them in accordance with the orders we get." He exhibits with his testimony not the originals or copies of any of the receipts actually issued for the particular whiskey in controversy, but says there is a regular form issued as follows:

"No. 9405. Martinsburg, West Virginia. United States Bonded Warehouse. Hannisville Distillery. Internal Revenue Warehouse Certificate. The Hannis Distilling Company hereby acknowledged to have received on the — day of —, 190—, from —— bbls. Hannisville Pure Rye Whiskey, which were deposited in our bonded warehouse on the— day of —, 190—, and will deliver the same upon presentation of permit, payment of storage and other charges, and the surrender of this certificate, which is transferable by delivery. It is expressly agreed that the Hannis Distilling Co. are not liable for injury to or destruction of said merchandise unless by gross neglect of the said Hannis Distilling Company or their agents. Lot No. —. S. N. —. Hannis Distilling Company..

*a.* Cancelled.

*b.* Notice: When whiskey is ordered to be tax paid warehouse certificate must be presented at our Philadelphia office at same time to have number of bbls. cancelled. We will ship at low valuation unless otherwise ordered.

*c.* Storage from date at eight cents per barrel and four cents per half barrel a month. Bills rendered January 1st and July 1st and when whiskey is withdrawn or transferred."

He further says that, before the issue of these receipts the serial numbers stamped on the barrels by the United States gauger are placed in the certificates or receipts, and that when the order comes to withdraw the whiskey the barrels are drawn out by the serial numbers called for. He says the company in giving orders never furnishes the address, but only the name, of the person for whom the whiskey is to be manufactured. He does not know whether the company carries any insurance on the property, but knows it is customary for insurance to be carried on whiskey by the owners. When referred to a provision in the warehouse receipt for the "payment of storage and other charges" upon surrender of the receipt, and asked as to the meaning thereof, he says: "It covers expenses like drayage, driving of barrels, and generally applies to gauger's charges for reducing." In reply to the question whether it included state taxes, he says: "Not that I know of. I might say positively no. I had better say positively no, because it is something new to me." He says that this whiskey had never been taxed before. As to whether the whiskey in the warehouse is not held until these charges have been paid before permitting it to leave the premises, the witness says: "We draw it out as I told you. They are not paid till the draft is honored. We make the draft." Frequently he says their drafts are dishonored, a statement somewhat inconsistent with paragraph "c" on the face of the receipt. He was asked whether this form of receipt was the only contract his company had with the purchasers of whiskey, and answered: "Yes, sir, so far as I know; don't suppose there is anything else." Asked whether his company held this whiskey in pledge or by mortgage for payment af the purchase price, he replied: "It does not to my knowledge."

This in substance is all the evidence offered by the petitioner. In our opinion it is insufficient to establish its claim. Not a single officer or agent of this company produced any original record of the sale and transfer of the particular whiskey involved in this controversy. The general manager was not called upon to produce the orders received from the Philadelphia office for this particular whiskey; nor does he pretend to state for whom, according to these

orders, the same was manufactured, or to whom warehouse receipts were issued; nor are any records brought from the company's principal office in Philadelphia (where, according to the testimony of this witness, the records are kept), which, in the absence of the original receipts if unable to produce them, would be the best evidence of the material facts called for. The general manager does not know, so far as the record shows, whether the name given him, if in fact given, was not that of some agent or officer of the company, or even the office boy in the Philadelphia office; he does not know that the name or names given him were of *bona fide* purchasers of the liquor. He does not say that, as a matter of fact, he ever issued warehouse receipts for this particular whiskey. He does not, nor does any other witness, give in evidence the serial numbers stamped on the 6,312 barrels, or the serial numbers stamped upon the other barrels. Paragraph "b" on the face of the receipt referred to provides that "when whiskey is ordered tax paid warehouse certificate must be presented at our Philadelphia office at same time to have number of bbls. cancelled," showing that where whiskey in bond is sold and held by the seller in the warehouse the record of the company is complete with respect to these serial numbers at least; and we have no doubt the records of the company are complete with respect to all such warehouse sales and receipts, including the name of the persons to whom the certificates may have been issued. All such competent and legal evidence was withheld by petitioner; and the court below upon this evidence was asked, and this Court is now asked, to adjudge the petitioner not taxable with this large amount of property. This we decline to do, and therefore affirm the judgment of the court below.

*Affirmed.*