# CHARLESTON.

HANNIS DISTILLING CO. *v.* COUNTY COURT.

Submitted September 4, 1909. Decided May 16, 1911.

1. TAXATION—*Ownership of Property in Custody—Evidence—Issuance of Certificate.*

   A warehouseman overthrows the presumption of his ownership of property in his custody, by proving the issuance of certificates therefor to other persons by which he has bound himself to deliver the possession thereof to the holder, on the surrender of the certificate and payment of storage and other charges on the property. (p. 429).

2. SAME—*Listing of Property for Ownership—Warehouseman—Taxation—Statutory Provisions—Trustee.*

   Under section 55 of chapter 35 of the Acts of 1905, it was the duty of every agent, having the custody of personal property, to list the same for taxation in the name of the owner. A warehouseman is a trustee within the meaning of clause "d" of said section. (p. 430).

3. SAME—*Listing of Property for Taxation—Statutory Provisions.*

   Such a custodian of property is not personally chargeable therewith for the purposes of taxation, if he lists it for that purpose in the name of the owner, on the request of the assessor. (p. 432).

4. SAME—*Listing for Taxation—Refusal of Warehouseman to List Property Belonging to Another—Power of Assessor.*

   On the refusal of a warehouseman to list the property under his control and to disclose the name of the owner thereof, the assessor may properly assess it in the name of the custodian. (p. 432).

5.  SAME—*Listing of Property for Taxation—Penalty for Failure to List.*

     An agent or other person, charged, for the purposes of taxation, with personal property of another in his possession, on his refusal to list the same, as required by chapter 35 of the Acts of 1905, is not entitled to relief from such assessment. (p. 432).

   Error to Circuit Court, Berkeley County.

   Action by the Hannis Distilling Company against the County Court of Berkeley County. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

   *Faulkner, Walker & Woods,* for plaintiff in error.

   *H. B. Gilkeson* and *A. B. Noll,* for defendant in error.

   POFFENBARGER, JUDGE:

   On this writ of error, involving an assessment of taxes against the plaintiff in error for the year 1907, our jurisdiction in cases of this class is questioned, and, after that, the correctness of the judgment of the circuit court.

   The nature of the controversy is the same as that involved in *Hannis Distilling Co.* v. *County Court,* reported in 62 W. Va. 442, which was an assessment of the same company for the year 1905. Taxed with several thousand barrels of whiskey, found in its bonded warehouse, and claiming not to be the owner thereof, the plaintiff in error tested the assessment unsuccessfully in the county court, appealed from its order to the circuit court, anad obtained a writ of error from this Court to the judgment of the circuit court. The appellate jurisdiction of this Court was not then denied. Here, the objection of want of such jurisdiction is interposed. A distinction between controversies involving only questions of valuation of admittedly taxable property, and controversies involving the taxability of property or taxation thereof in the name of a particular person, supposedly made by the statute, has been often adverted to, and it has been generally conceded that the right of review stops in the circuit court, in the former class, but extends to this Court in the latter.

   Upon mature and laborious consideration, the jurisdiction

was upheld in *South Penn Oil Co.* v. *County Court,* 42 W. Va. 80. The reasoning of Judge HOLT in that case is not conclusive, but the decision has never been overruled. Moreover, it harmonizes with decisions in *Bank* v. *Mercer County,* 36 W. Va. 341, *U. S. Coal &c. Co.* v. *Randolph County Court,* 38 W. Va. 201, *Bridge Co.* v. *Kanawha County Court,* 41 W. Va. 658, and *Bank* v. *State,* 58 W. Va. 559. The jurisdiction has been denied in several cases involving only questions of valuation. *Bluefield Water Works Co.* v. *State,* 63 W. Va. 480, *McLean* v. *State,* 61 W. Va. 537, *Bank* v. *County Court,* 56 W. Va. 208. None of the latter in any way conflict with those of the former class. Though the McLean case may have involved taxability of oil and gas in place, it was disposed of as one pertaining only to valuation and the appellate jurisdiction denied on that ground. Whether the decision in *South Penn Oil Co.* v. *County Court,* on the question of jurisdiction, was right or wrong, it has stood unchallenged and unaffected for many years. Though the tax laws have been frequently revised and altered by the legislature within that period, the power and jurisdiction asserted as aforesaid, have not been denied or devested by any statutory provision. From this, we assume satisfaction with the ruling on the part of both the people and the legislature, and the wholesomeness of such jurisdiction is manifest. But for it, property might be regarded in one judicial circuit as taxable and in another untaxable, and persons as chargeable with taxes on property under certain conditions, and not under others, according to the circuit in which they happen to reside. Uniformity of decision upon questions of this kind is both desirable and necessary, and it is difficult to see how it could be attained otherwise than by the exercise of the jurisdiction of this Court in some form. In view of these considerations, we are unwilling to overrule these decisions, and consider it unnecessary to enter upon any elaborate discussion of the question.

On the writ of error disposed of in 62 W. Va. 442, we held that the joint custody and control of a bonded warehouse, by the proprietor thereof and the federal store-keeper in charge, did not constitute such a change of possession of the liquor stored therein as to destroy presumption of ownership thereof by the distiller; and that, upon an application for relief from erroneous assessment, by the distiller, upon the theory of owner-

ship of the liquor assessed to him in the holders of warehouse receipts or certificates therefor, he must overcome this presumption by proof of title in the holders of such certificates.

Seeing the proof of such ownership did not measure up to the legal requirements, the judgment of the circuit court, refusing to disturb the assessment, was affirmed. In this case, we are confronted with proof which we deem sufficient to overcome the presumption. Insufficiency of the evidence to prove it has been argued at great length in the brief, but we think the position of the attorneys for the defendant in error is untenable. They have also insisted that the plaintiff in error is a trustee in possession or a pledgee in possession against whom the tax on the property may be lawfully assessed. We are not convinced by this argument either. The distilling company has no title to the property or beneficial interest therein. It is a mere bailee for hire. It is, therefore, clearly not a trustee within the meaning of that provision of the statute. Neither is it a pledgee. The property is not held for any independent, collateral or antecedent indebtedness of any kind. It is merely stored in the warehouse and subject to a lien by contract, as well as by the common law, for storage charges, for the enforcement of which no power of sale is given either by the contract or the law.

If the record disclosed nothing more, the applicant would have been entitled to relief. In its return to the assessor, it charged itself with 8,305 barrels of whiskey, claiming that to be all it owned, although there were 22,000 barrels more in the warehouse. This it disclaimed ownership of and failed to list as the property of any other person. Thereupon the assessor charged it with $176,000.00, as the value of the omitted property. Assuming failure of duty on the part of the applicant, respecting the listing of this property, an inquiry arises as to which the briefs are silent, namely, whether such failure denied the applicant any remedy for the assessment of this property against it.

In the case between these same parties, reported in 62 W. Va. 442, we held that, for the purposes of taxation, the title to personal property was presumed to be with the possession thereof, and that an assessment against this applicant of property in its possession, but not owned by it, on its refusal to disclose

the name of the owner, was a proper assessment. If, therefore, it refused in 1907, to disclose the name of the owner of the property, then in its custody, the same principle will sustain this assessment, if the statute denied it all remedy for correction of the error, by way of punishment for its refusal to list the property.

The assessment was made under an act passed by the Legislature on February 24, 1905, and in effect from its passage. That act made it the duty of the owners of property to furnish the assessor, on his application, all necessary information concerning the same, and also provided that lists, according to a prescribed form, should be made and furnished; in the case of the property of a minor, by his guardian, if any, and if none, by his father, if living, or if not, by his mother, if living, and if neither was living or resided in the state, by the person having charge of the property; in the case of property of a married woman, by herself or her husband, in her name; in the case of the property of a husband, out of the state or incapable of listing the property, by his wife; in the case of property held in trust, by the trustee, if in possession thereof, otherwise by the party for whose benefit it was held; in the case of property of a deceased person, by the personal representative; in the case of the property of an insane person, or a person confined in the penitentiary, by his committee; in the case of the property of a company, incorporated or not, whose assets were in the hands of an agent, factor or receiver, by such agent, factor or receiver, or the president, proper accounting officer, partner or agent within the state. Other provisions were made for listing property held under other peculiar circumstances. In all these cases, the person required to list the property was directed to list it separately from his own, designating the person, company, estate or trust to which it belonged. The plain object of this provision was to secure a full and complete return of all personal property for the purposes of taxation. It is less general in its terms than the corresponding provision found in the previous statute, section 41 of chapter 29 of the Code of 1899. The first clause of that section required every person of full age and sound mind to list for taxation the property belonging to him, subject to certain exceptions, and the persons and property under his charge and control subject to taxation, and fur-

nish to the assessor, on his application, all necessary information respecting the same. These two provisions are in *pari materia*. Presumptively, the new statute was intended to be as broad as the old one. It would have been anomalous and manifestly contrary to the presumed legislative intent to leave an avenue of escape for any taxable property. We must assume, therefore, that somewhere in section 55 of chapter 35 of the Acts of 1905, the Legislature intended to provide for the return of any taxable property belonging to one person and in the possession of another. It is plain that it did not intend to charge property against any person simply and only because he had it in his possession, for he was authorized and directed to list it in the name of the owner. But manifestly it did not intend to permit property to escape taxation by reason of the custody thereof by persons other than the owners. As has already been stated, this new section is not as broad in its terms as the old one. Nowhere does it say every person shall list his own property and the property under his charge and control. Instead of saying this and then proceeding to give directions for listing in certain cases of such custody, it gives directions in those cases, but omits the general provision covering all other similar cases. However, the two provisions are acts in *pari materia* and the old one may be looked to for purposes of the new one. In the case of a minor, his property must be listed by the person having it in charge, if there is no other person in the state to do it. In the case of property owned by companies having their assets in the hands of an agent, factor or receiver, such agent, factor or receiver must list it. Neither of these two provisions, found in clauses "a" and "g" of said section 55, covers the case we have here in express terms, but they disclose the spirit and purpose of the section. Clause "d" of that section says property held in trust must be listed by the trustee if in possession thereof, otherwise by the party for whose benefit it is held. Giving effect to the presumed intention of the Legislature, we must give the word "trustee" its broadest and fullest meaning. While the applicant was a bailee, and not technically a trustee, a bailment involves a trust in the broad sense of the term. The bailee is a custodian of property which clearly embraces a trust. If the statute contained no word, expressive of intent, to require custodians of property, other than those specifically mentioned,

and we regarded "trustee' as having been used in its technical sense, we might hold the statute insufficient to cover a case like this. *White* v. *County Court,* 63 W. Va. 230; but we have a word here, which, taken in its broad, non-technical sense, expresses the intent of the old statute anad makes the new one accord with it as well as the mandate of the constitution, requiring taxation of all property. We think, therefore, it was the duty of the applicant to list the property in question.

Assuming its refusal to do so, after a proper demand, we must ascertain the consequences of such failure. Sections 71 and 72 of said chapter 35 of the Acts of 1905 require persons listing property for taxation to append to the lists certificates of a prescribed form and then provided as follows: "Any person whose duty it is by law to list property for taxation and who shall refuse to verify such list, being called upon to do so shall, in addition to any other penalty provided for such refusal, be denied the right to apply to any court to have the assessment and valuation of his property, which the assessor may make, changed in any manner." Section 73 provides as follows: "If any person whose duty it is by law to list any real or personal property, being called upon by the assessor to do so, refuse to furnish a proper list thereof, or to make such oath as is required by this chapter; or if any person refuse to answer, or answer untruly, any question lawfully asked by the assessor, or fail or refuse to deliver any statement required by law, * * * he shall be denied all remedy provided by law for the correction of any assessment made by the assessor." In the case of the failure of any person to furnish a proper list or the furnishing of an incomplete or erroneous list, the assessor was authorized by section 74 to list the property and fix its value, or to supply the omission and correct the errors, upon the best information he could obtain from other sources.

Thus the law provided a remedy in case of refusal to furnish a list or the rendition of an incomplete or erroneous list. It authorized the assessor to charge the derelict person with such property as, in his opinion, based upon the information obtainable, he ought to be charged with. It also inflicted upon the obdurate citizen a penalty for his misconduct by denial of any relief from the error, if any, in the assessor's list and valuation. Section 129 of the same chapter gave a right to apply to the

county court for relief from erroneous assessments, but that section must be read in connection with sections 72, 73 and 74, denying relief in certain cases and for stated causes. Effect must be given to all these sections. We are not to assume the legislature intended by implication to give back, in section 129, what it had taken away by sections 72 and 73; and effect may be given to said sections without destroying the effect of section 129. The legislature may well have contemplated numerous cases of errors and mistakes on the part of citizens and officers in the listing and valuation of property, who were in no sense guilty of any disobedience of law. All such are allowed the benefit of that section. Nothing in the statute says a list for valuation made, as required by sections 55, 72 and 73, shall be binding upon the person who makes it. The plain purpose of these provisions is to compel a full and complete disclosure of taxable property with its value. If, by some mischance, a person erroneously charged himself with more property than he owned, or valued it beyond its worth, he also could obtain the benefit of the provision in section 129 of the same chapter. Hence, there is no rule of construction which forbids reasonable operation to all of these provisions. They were all in effect in the year 1907, when this assessment was made.

Obviously, then, the remaining and conclusive inquiry is, whether a demand was made upon the applicant to list the property and it refused to do so. That a blank list was delivered to it is beyond question. It filled out that list, charging itself with all of its own property, but omitting the 22,000 barrels of whiskey in question. As to that property it made no list, and the assessor testified that its agent in charge refused to do so. In response to the question, whether he had any conversation with the agent about the assessment of this property, he says, "Well, as well as I can recollect when Mr. Parks handed me that blank it was filled up by the Hannis Distilling Company. I don't know whether I could go over the exact words that he said, he said I would have to get it like I got it before, and I got it." He then testifies that, for the year 1905, he went to the officials of the company and they told him they could not give him any information about the whiskey in the warehouse, and he then reported the matter to the State Tax Commissioner who directed him to assess it to the com-

pany arbitrarily. He did so and that assessment was the one formerly disposed of in this Court. Several letters from the Tax Commissioner to the assessor, dated in the month of July, 1905, relating to the subject and giving such directions, were put in evidence in this proceeding. Mr. Parks, the agent, denies the conversation about the ownership of the property to which the assessor testified, saying he was positive no such inquiry was made of him for the year 1907, but he thinks it was made in the year 1905. He also admits having told the assessor he did not know who the owners of the property were and that, if he had inquired of him in 1907, he could not have told him the names of the owners but would have submitted the matter to the Philadelphia office. We think it plain, from all this evidence, that the information would not have been given, if it had been asked, that the list would not have been made, and also that a sufficient demand was made by the assessor, when he mailed or delivered to the applicant a blank on which this property should have been listed. The demand and refusal of 1905 would not suffice for the year 1907, of course, but the transactions of that year show a deliberate purpose, on the part of the company, to prevent the taxation of the property stored in its warehouse in its own name or in the names of the owners. It maintained this position in 1906. It received an assessment blank in 1907, knowing the assessor desired it to list this property, and used it for its own property. It must have known additional blanks would have been furnished on request. These circumstances all go into the scale on the conflict in testimony between its agent and the assessor which both the county court and the circuit court have passed upon. We cannot disturb their finding.

Seeing no error in the judgment, we affirm it.

*Affirmed.*