IN THE MATTER OF THE ESTATE OF
RACHEL B. EVANS, *Deceased*
RONALD E. EVANS, *Executor Under the
Will of Rachel B. Evans, Deceased*

*v.*

RICHARD L. DAILEY, *State Tax Commissioner
of West Virginia*

(No. 13220)

Submitted January 16, 1973.    Decided February 20, 1973.

*Chauncey H. Browning, Jr.,* Attorney General, *Jack C. McClung,* Assistant Attorney General, for appellant.

*McDougle, Davis, Handlan & Davis, Fred L. Davis,* for appellee.

NEELY, JUDGE:

This is an appeal by the State Tax Commissioner from an order of the Circuit Court of Ritchie County entered on May 17, 1971, which set aside appellant State Tax Commissioner's deficiency assessment of inheritance tax on the grounds that the deficiency assessment was erroneous.

The case turns upon the proper statutory construction of Chapter 11, Article 11, Section 7, *Code of West Virginia,*

1931, and the application of that statute to Item V of the will of Rachel B. Evans. Item V of the will provides:

"All the rest, residue, and remainder of my property, real, personal and mixed, of whatsoever nature, to which I may be legally or equitably entitled, or over which I may have any power of appointment, I devise, bequeath and appoint to my said husband, Ronald E. Evans, for and during the term of his natural life, without impeachment for waste, with full power to use, dispose of, sell and convey any or all of it as he may desire, the same as I might do if living. After the death of my said husband, or if for any reason his said life estate should sooner terminate by renouncement or otherwise, I devise, bequeath and appoint the aforesaid property to Lawrence Leslie Evans and Walter (Pat) Donald Evans, two nephews of my said husband, or to either of them as shall survive me, their heirs, executors, administrators and assigns, as tenants in common. If either of said nephews shall predecease me, leaving issue, I direct that the share heretofore given to the nephew of my said husband shall not lapse but shall be paid and transferred to his issue, their heirs and assigns forever."

Section 11-11-7 the *Code,* provides:

"Whenever the transfer of any property shall be subject to tax hereunder and only a life estate, or an interest for a term of years, or a contingent interest to be transferred to one person and the remainder or reversionary interest to another, the tax commissioner on the application of any person in interest, or upon his own motion, may, after due notice to the persons interested, apportion such taxes among such persons and assess to each of them his proper share of such taxes, and shall make his certificates accordingly, which shall be forwarded and disposed of in the same manner as other certificates by him herein provided for. The portion of any such taxes apportioned to any person entitled in remainder or reversion shall be payable at once, and such person shall be required to pay them in the same manner, and within the same time, as if his interest had vested in possession."

The Tax Commissioner contended that two estates were created, a life estate in Ronald E. Evans and a remainder in Lawrence Evans and Walter Evans. The appellees contended that the whole estate should be taxed to the life tenant because more than a life estate was created. The question in this case is whether "only a life estate" passed to the husband, Ronald E. Evans, or whether the husband, Ronald E. Evans, received more than a life estate, which would remove the transfer from the operation of Section 11-11-7 of the *Code.*

The attempt to tax the bequest as two estates under Section 11-11-7 of the *Code* is contested because the life tenant, Ronald E. Evans, as husband of decedent, is entitled to the three percent rate of inheritance tax while the remaindermen are taxed at the rate of ten percent because they are without blood relation to the decedent. Chapter 11, Article 11, Section 2 of the *Code of West Virginia,* 1931, as amended. The Tax Commissioner determined that two estates were created by Item V of the will, and accordingly issued a deficiency assessment of $3,498.65.

The Circuit Court correctly concluded that the case depends upon the proper interpretation of the words "only a life estate" in Section 11-11-7 of the *Code.* In order to derive the legal effect of the word "only" a purely linguistic analysis would not be instructive; however, an analysis of the economic consequences to the respective parties of differing tax treatment leads to but one reasonable interpretation of the word "only".

It is difficult to characterize the estate devised and bequeathed by Rachel B. Evans in terms of traditional property law. Before the passage of Chapter 36, Article 1, Section 16 of the *Code of West Virginia,* 1931, as amended, a bequest or devise similar to that made by Rachel B. Evans would have been enlarged from a life estate to a fee simple estate under common law. *Morgan v. Morgan,* 60 W.Va. 327, 55 S.E. 389, (1906). However, Section 36-1-16 abrogated the common law by providing:

"If any interest in or claim to real or personal property be given by sale or gift inter vivos or by will to one, with a limitation over either by way of remainder or of executory devise or any other limitation, and by the same conveyance or will there be conferred, expressly or by implication, a power upon the first taker in his lifetime or by will to use or dispose absolutely of such property, the limitation over shall not fail or be defeated except to the extent that the first taker shall have lawfully exercised such power of disposal. The proceeds of a disposal under such power shall be held subject to the same limitations and the same power of use or disposal as the original property, unless a contrary intent shall appear from the conveyance or will: Provided, however, that a trust deed or mortgage executed by such first taker shall not be construed to be an absolute disposal of the estate thereby conveyed unless there be a sale thereunder, but shall be effective only to the extent of the lien or encumbrance created by such trust deed or mortgage."

Consequently, a life tenant with unlimited powers of use and disposal takes something less than a fee simple.

The life tenant cannot defeat the remaindermen's *right* to the balance of the estate at the termination of the life tenancy; however, the life tenant, through waste or *bona fide* sale, can defeat the remaindermen's *enjoyment of the right* by converting all of the corpus during the life tenancy. *Flesher v. United States,* 238 F. Supp. 119 (N.D., W.Va. 1965).

The estate bequeathed and devised by Rachel B. Evans was certainly more than a traditional life estate due to the preponderance of fee simple characteristics. In this case, the remaindermen received an estate which in practical terms may be little more than an illusion because they take only a vested remainder subject to divestment at the pleasure of the life tenant. 4A *Thompson on Real Property* (1961 Replacement) 470.

After initially determining that *Code* 11-11-7 controlled, the Tax Commissioner applied the statutory computation

method of Chapter 43, Article 2, Sections 1 through 5 of the *Code of West Virginia,* 1931, as amended, and evaluated the life estate with power of disposal in Ronald E. Evans at $16,232.29 and evaluated the remainder in the two nephews at $58,730.21.

Obviously, this assessment bears no relationship to the actual fair market value of the two estates created under the will. In point of fact, the life tenant could sell his entire interest in the life tenancy—as opposed to the corpus of the estate—at a price approaching the value of the corpus itself. Conversely, the remaindermen could receive almost nothing on the open market for their interest, yet under the statutory computation method more than three and one-half times the value of the life estate is attributable to the remaindermen as their taxable interest.

If this Court were to accept the Tax Commissioner's expansive definition of a life estate, the economic consequences of Chapter 11, Article 11, Section 12 and Chapter 11, Article 11, Section 7 of the *Code of West Virginia,* 1931, read in *pari materia,* would be that an impecunious remainderman in the same circumstances as the remaindermen in this case would be immediately obligated to the executor of an estate for payment of taxes on an interest in property which, at the time of the assessment, had no fair market value. He would not be able to sell or mortgage his interest to pay the taxes, and an injustice not contemplated or sanctioned by the legislature would be perpetrated.

Section 11-11-12 of the *Code* provides:

> "Every executor, administrator, trustee, guardian, committee or other fiduciary having charge of an estate, any part of which is subject to such tax, and every person to whom property is transferred which is subject to such tax, but is not in charge of any such fiduciary, shall pay the same upon the market value of all the property subject to tax, whether there are or are not devises or bequests of successive interests in the same property, and whether such successive

interests, if any, are defeasible or indefeasible, absolute or contingent. Such payment shall be made out of such estate in the same manner as other debts may be paid. Any such fiduciary may sell personal property for that purpose when necessary, and the circuit court may authorize him to sell real estate for the payment thereof in the same manner as it may authorize the sale of real estate for the payment of debts. * * * ."

However, Section 11-11-7 of the *Code* provides:

" * * * The portion of any such taxes apportioned to any person entitled in remainder or reversion shall be payable at once, and such person shall be required to pay them in the same manner, and within the same time, as if his interest had vested in possession."

Inheritance tax is assessed upon the right or privilege of acquiring property. *Central Trust Company v. State Tax Commissioner,* 116 W.Va. 37, 178 S.E. 520 (1935). Although Ronald E. Evans could not dispose of the property by will, he had the unconditional right to dispose of all of it during his lifetime in any way in which he saw fit. Consequently, he had the right to acquire all of the property, and he is the person, from an economic point of view, who is able to bear the weight of taxation.

The rule is well established in this jurisdiction and elsewhere that tax levying statutes are, in case of doubt, to be construed strongly against the government and in favor of the taxpayer. *In re Glessner's Estate,* 146 W.Va. 282, 118 S.E.2d 873 (1961). Therefore, analyzing the economic consequences to the respective parties, and considering the rule which requires that tax statutes be construed strongly in favor of the tax payer, the Court must conclude that the intention of the legislature in its use of the word "only" in Section 11-11-7 of the *Code* to modify the compound noun "life estate," was that Section 11-11-7 should apply exclusively to life estates with implied prohibitions by operation of law against waste and sale of the corpus. When there is a life estate, there is

also a definitely ascertainable vested remainder, which if necessary, the remainderman can sell or mortgage to pay the taxes.

This case is limited in terms of precedent exclusively to tax questions arising under Section 11-11-7 of the Code and does not in any way interpret or change the law of real property or any other tax law of this State. Accordingly the judgment of the Circuit Court of Ritchie County is affirmed.

Judge Haden did not participate in the deliberation on this case.

*Affirmed.*