*In Re:* THE PETITION OF ALBERT HULL,

*Assessor of Grant County, etc.*

(No. 13536)

Decided March 2, 1976.

364

*Jackson, Kelly, Holt & O'Farrell, Thomas N. Chambers and Lee O. Hill, Geary & Geary, James Paul Geary* for appellant (VEPCO).

*Andrew N. Frye, Jr.,* Prosecuting Attorney, for assessor, Grant Co.

*Chauncey H. Browning,* Attorney General, *Jack C. McClung,* Deputy Attorney General, *Robert P. Howell,* Assistant Attorney General, for State of West Virginia.

BERRY, CHIEF JUSTICE:

The appellant, Virginia Electric and Power Company, hereinafter referred to as VEPCO, appeals the judgment of the Circuit Court of Grant County, entered on May 2, 1974, which reversed instructions of the State Tax Commissioner issued to the Assessor of Grant County and ruled that the Assessor of Grant County had the authority to assess *ad valorem* taxes on property owned by VEPCO in Grant County. The issue in controversy in the court below related to which taxing authority, the West Virginia Board of Public Works or the Assessor of Grant

County, had the authority to assess the property in question.

The appellant, VEPCO, engages in the business of providing electric power and services as a public utility under a certificate of convenience and necessity issued by the West Virginia Public Service Commission. In connection with its business, VEPCO maintains and operates an electric power generating facility at Mount Storm, Grant County, West Virginia. The facility is divided into separate units, respectively designated simply Units 1, 2 and 3. Units 1 and 2 of the facility were completed and operative prior to the events giving rise to the proceedings below. Between December, 1969 and December 8, 1973, Unit No. 3 of the Mount Storm generating plant was in the process of being constructed. On December 31, 1972, the reported cost of construction of the work in progress on Unit No. 3 was in excess of $112 million dollars.

On April 27, 1973, VEPCO reported its construction work in progress to the West Virginia Board of Public Works in a return filed with the State Tax Commissioner for assessment for the tax year 1974. The gross statement of construction in progress reported by VEPCO included the $112 million dollars representing Unit No. 3 at Mount Storm. On October 1, 1973, the Board of Public Works assessed the property reported by VEPCO and the assessment, not having been appealed, became final.

Acting on information contained in the return by VEPCO to the Board of Public Works, the Assessor of Grant County, Albert H. Hull, assessed Unit No. 3 of the Mount Storm facility at $15,000,000 and made the entry in the land books for Union District, Grant County: "Third Unit Vepco Plant, Value of Buildings $15,000,000; total value of land and buildings, Class 3 or 4— $15,000,000." VEPCO protested the assessor's action on the ground that its property was being doubly taxed. In response to this protest, the assessor certified the question of his authority to the State Tax Commissioner on February 22, 1974. Acting in accordance with *Code*, 11-3-

24a, as amended, on February 27, 1974, the Tax Commissioner replied to the assessor with his opinion that the authority to assess Unit No. 3 was exclusively with the Board of Public Works. In addition, the Tax Commissioner instructed the assessor to remove the property in question from the Grant County land books.

Upon receipt of the Tax Commissioner's instructions, the assessor of Grant County made application to the circuit court of that county for a review of the question of classification and taxability of VEPCO's Unit No. 3. After hearings and arguments on the assessor's petition, the circuit court ruled that the Tax Commissioner's instructions were erroneous and ordered the entry of the Third Unit of VEPCO's Mount Storm generating plant on the land books of Union District, Grant County, as Class 3 property. It is from this judgment that VEPCO appeals.

On January 2, 1976, the Assessor of Grant County filed with this Court an "Answer and Return" confessing error. He stated in his answer and return, "That the circuit court did error [sic] in reversing the instructions of the State Tax Commissioner and that the State Tax Commissioner is correct in applying *Code* 11-4-11 and *Code* 11-6-24, as the same have been applied by this Court." No other appearance or argument was made by the assessor. The Attorney General, by leave of this Court, appeared as amicus curiae on behalf of the Board of Public Works and the State Tax Commissioner to urge that the judgment of the Circuit Court of Grant County be reversed.

It is clear from the relevant statutes and authorities that the Circuit Court of Grant County erred in directing the reinstatement of the assessment of VEPCO's property in Unit No. 3 on the land books of Grant County and allowing assessment by the assessor of that county of VEPCO's construction in progress on Unit No. 3. VEPCO is a public service corporation and with limited exceptions the jurisdiction for the assessment of the

property of a public service corporation is with the Board of Public Works. Chapter 11, Article 6 of the *West Virginia Code* specifies this authority in detail. *Code*, 11-6-1, as amended, provides in part as follows:

"On or before the first day in May in each year a return in writing to the board of public works shall be delivered to the tax commissioner ... by the owner or operator of every pipeline, wholly or in part within this State, used for the transportation of oil or gas or water, whether such oil or gas or water be owned by such owner or operator or not, or for the transmission of electrical or other power ... and all other public service corporations or persons engaged in public service business whose property is located wholly or in part within this State."

In addition, *Code*, 11-6-11, as amended, provides:

"Upon the fifteenth day after giving the notices required by section nine [*Code*, 11-6-9] of this article, or as soon thereafter as reasonably convenient but not later than the first day of October, the board of public works shall proceed to assess and fix the true and actual value of all property of such owner or operator hereinbefore required to be returned ...."

All buildings and real estate used and occupied by any public service corporation for purposes directly related to the business function of the public service corporation shall be assessed by the Board of Public Works, but if such buildings and real estate are not so used and occupied they may be assessed by the proper county authorities. *Code*, 11-6-24; *Cabot v. Coplin*, 106 W. Va. 5, 144 S.E. 566 (1928). However, the VEPCO Mount Storm installation Unit No. 3 was comprised of construction work or work in progress on improvements consisting of unfinished buildings and attachments to the real estate and under State law was personal property. This classification is made clear by *Code*, 11-4-11, as amended, which reads as follows:

> "No new building, addition or improvement shall be assessed until it is so far finished as to be fit for use, but the *material* in the same shall be entered in the *personal property* books and assessed as provided by this chapter." (Emphasis supplied.)

Although the above quoted Code section relates to assessments generally, it must be read *in pari materia* with *Code*, 11-6-11, as amended, which specifically grants the power to the Board of Public Works to assess as personal property the materials in construction work in progress:

> "Nothing in this chapter contained shall be construed to require the assessment by the board of public works of any part of a railroad, telegraph, telephone or pipeline until such part is so far completed as to be fit for use. But material held by any railroad, telegraph, telephone or pipeline company *shall be returned* to the board of public works for assessment as *personal property*." (Emphasis supplied.)

In addition to the explicit legislative expression contained in the two statutory sections just quoted, this Court has held on at least two occasions that the power to assess the personal property of a public service corporation rests solely with the Board of Public Works. *Ohio Fuel Company v. Price*, 77 W. Va. 207, 87 S.E. 202 (1915); *Cabot v. Coplin, supra.* In the first syllabus point adjudicated in the *Ohio Fuel Oil* decision, the Court stated:

> "The personal property owned and operated by a public service corporation is assessable by the board of public works, without regard to the situs of such property, whether connected with or dissociated from the immediate use and operation of property employed by it in serving the public. And, when such property is assessed by the board of public works, the local assessing authorities cannot lawfully alter or modify the assessment so made."

This Court's ruling in both the *Ohio Fuel Oil* and *Cabot* cases were predicated on the language of *Code*, 11-6-24; the Court concluding that since that statute makes particular reference to "real estate" in permitting county authorities to assess such property not used or occupied for public service purposes, the doctrine of *inclusio unius est exclusio alterius* bars the local authorities from assessing property other than that specifically enumerated. We are in agreement with the holdings of these cases and reaffirm the rule that only real property held by public service corporations used for purposes unrelated to the public service function is assessable by the county assessor. All other real property and all personal property is assessable exclusively by the Board of Public Works.

Based on the foregoing authorities, we conclude that materials in construction work in progress by a public service corporation may be assessed only by the Board of Public Works. The action of the Board of Public Works in making such an assessment "binds all inferior taxing bodies, and precludes reassessment by them of the property so previously assessed . . . ." *Ohio Fuel Oil v. Price, supra.*

For the reasons stated herein, the judgment of the Circuit Court of Grant County is reversed and judgment is entered here for the appellant.

*Reversed and judgment entered.*