358 S.E.2d 791

**CALHOUN COUNTY ASSESSOR, et al.**

**v.**

**CONSOLIDATED GAS SUPPLY CORP., etc., et al.**

**No. 17003.**

Supreme Court of Appeals of West Virginia.

May 29, 1987.

Rehearing Denied July 16, 1987.

---

Lewis, Ciccarello & Friedberg, (Brickford Y. Brown) Charleston, for appellant.

Robinson & McElwee, Charleston, Richard A. Hayhurst, Parkersburg, Kenneth Coleman, Ashland, Ky., Lawrence Nydes, Pittsburgh, Pa., Thomas N. Hanna, Charleston, for appellee.

MILLER, Justice:

This appeal involves the narrow issue of whether a county tax assessor (assessor) has the authority to require utility companies conducting operations within the county to provide information relating to property owned by third parties with whom the utilities have oil and gas leases. The circuit court generally concluded that the assessor did not have such authority.

The assessor relied on W.Va.Code, 11–3–2 (1983), and W.Va.Code, 11–3–3 (1961), when he requested the respondents to furnish information regarding their oil and gas operations within the county during the 1983 tax year. When the respondents refused to provide the information, the assessor instituted an action in the Circuit Court of Calhoun County seeking to compel the disclosure of the requested information.[1]

I.

We begin our analysis by noting that statutes governing the imposition of taxes are generally construed against the government and in favor of the taxpayer. E.g., *Consolidation Coal Co. v. Krupica,*

163 W.Va. 74, 80, 254 S.E.2d 813, 816 (1979); *Ballard's Farm Sausage, Inc. v. Dailey,* 162 W.Va. 10, 246 S.E.2d 265 (1978); *In Re Evans' Estate,* 156 W.Va. 425, 194 S.E.2d 379 (1973); N. Singer, 3A Sutherland Statutory Construction § 66.01 (4th ed. 1986). However, an opposite rule of construction is recognized for statutes governing assessment procedures: "[A]s a general rule, courts have been tolerant in construing statutes prescribing the procedure for assessments ... [and] [t]he factor of administrative convenience in the enforcement and collection of taxes is taken into consideration by the courts." N. Singer, *supra* at § 66.06.

The Supreme Court of Arkansas in *Ragland v. Alpha Aviation, Inc.,* 285 Ark. 182, 184, 686 S.W.2d 391, 392 (1985), recently recognized this important distinction and stated: "It is a general rule of construction that statutes establishing procedures for collection and assessment of taxes will be construed in favor of the government.... *see also* 84 C.J.S. *Taxation,* § 393 [ (1954) ]; *R.J. Reynolds Tobacco v. Carson,* 187 Tenn. 157, 213 S.W.2d 45 (1948); *Southern Pac. Ry. Co. v. State,* 34 N.M. 479, 284 P. 117 (1930)."

We addressed the question of a county assessor's authority to require a taxpayer to answer questions relevant to an assessment of property in *In Re Shonk Land Co.,* 157 W.Va. 757, 204 S.E.2d 68 (1974). There two coal companies refused to answer questions that had been asked by the county assessor on a standardized form designed to elicit information relevant to an assessment of their coal properties at true and actual value. The assessor placed a value on the coal properties without the benefit of the information requested, and the coal companies sought to challenge the valuation before the county commission, sitting as a board of equalization and review.

The board refused to consider the application for review based on W.Va.Code, 11–3–10, which generally provides that a tax-

---

1. The Calhoun County Commission does not argue its position on appeal and we, therefore, do not consider it. *See, e.g.,* Syllabus Point 6,

*Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981); *Quackenbush v. Quackenbush,* 159 W.Va. 351, 222 S.E.2d 20 (1976).

payer forfeits any right to challenge the correctness of an assessment, if the taxpayer has refused to answer any question asked by the assessor or has failed or refused to submit any statement required by law.

The companies appealed unsuccessfully to the circuit court and we affirmed. They contended among other things, just as the respondents have here, that the assessor lacked statutory authority to promulgate the standardized form and, as a ministerial officer, could not demand any information other than that prescribed by the State tax commissioner. The Court rejected these arguments and upheld the assessor's authority to design a reporting form and require its completion and submission, holding in Syllabus Point 1 of *Shonk Land Co.*:

"An assessor, in the fulfillment of his legal obligation to assess property at its true and actual value, may prepare and submit to taxpayers forms which constitute a request for information which he deems necessary in determining a proper valuation of the properties and so long as the information requested is reasonable such information constitutes a statement required by law as contemplated by Code, 1931, 11–3–10, as amended."

We explained in *Shonk Land Co.*, 157 W.Va. at 761–62, 204 S.E.2d at 70, that the assessor's obligation was independent of the duties of the tax commissioner:

"The county assessor, a constitutional officer, is charged with the responsibility of assessing properties in the county at their true and actual value. Code, 1931, 11–3–1, as amended. See *George F. Hazelwood Company v. Pitsenbarger, As-*sessor, 149 W.Va. 485, 141 S.E.2d 314 (1965). In the accomplishment of that required endeavor it is incumbent upon the assessor to seek out all information which would enable him to properly fulfill his legal obligation. See *Younger v. Meadows*, 63 W.Va. 275, 59 S.E. 1087 (1907).... Code, 1931, 11–3–10, as amended, clearly provides that the taxpayer shall answer any question 'asked by the assessor *or* by the tax commissioner'. (emphasis supplied)....

"Each county has its own problems and circumstances which may require the assessor to make inquiries which would not occur to the state tax commissioner.... In view of the foregoing we are of the firm opinion that Form KCM 170 contains reasonable and lawful questions by the assessor, that such questions are contemplated in the fulfillment of his duties and that Form KCM 170 constitutes a statement required by law as contemplated by Code, 1931, 11–3–10, as amended."

*Shonk Land Co.* dealt with the primary obligation of the assessor to secure relevant information by way of forms. It established that this right was independent of any authority vested in the State tax commissioner. It did not deal with the assessor's right to seek information from third parties.

The obligation of a third party to disclose information was discussed in *Hannis Distilling Co. v. Berkeley County Court*, 69 W.Va. 426, 71 S.E. 576 (1911). There, we construed the term "trustee" in the 1905 version of W.Va.Code, 11–3–3,[2] to include a warehouseman who held several thousand

---

**2.** This same provision exists in W.Va.Code, 11–3–3 (1961), which provides:

"The list required in the preceding section [§ 11–3–2] shall be made and information furnished: (a) With respect to property of a minor, by his guardian, if he has one, and if he has none, by his father, if living, or, if not, by his mother, if living, and if neither be living or be a resident of this State, by the person having charge of the property; (b) with respect to the separate property of a married woman, by herself or her husband in her name; (c) with respect to the property of a husband, who is out of the State or incapable of listing such property, by his wife; (d) with respect to the property held in trust, by the trustee, if in possession thereof, otherwise by the party for whose benefit it is held; (e) with respect to the personal property of a deceased person, by the personal representative; (f) with respect to the property of an insane person, or a person sentenced to confinement in the penitentiary, by his committee; (g) with respect to the property of a company, whether incorporated or not, whose assets are in the hands of an agent, factor or receiver, by such agent, factor or receiver, otherwise by the president or proper accounting officer, partner or agent within the State; (h) with respect to credits or investments, in

barrels of whiskey as a bailee. Because the company had refused to list the names of the owners of the whiskey barrels stored in its warehouse, this Court affirmed the assessor's action in assessing the value of the personal property against the warehouse company and held in Syllabus Point 2: "Under section 55 of chapter 35 of the Acts of 1905, it was the duty of every agent, having the custody of personal property, to list the same for taxation in the name of the owner. A warehouseman is a trustee within the meaning of clause 'd' of said section." In interpreting the statute in this manner, this Court stated:

"Neither of these two provisions, found in clauses 'a' and 'g' of said section 55 [now W.Va.Code, 11–3–3, set out in note 2, *supra*], covers the case we have here in express terms, but they disclose the spirit and purpose of the section. Clause 'd' of that section says property held in trust must be listed by the trustee if in possession thereof, otherwise by the party for whose benefit it is held. Giving effect to the presumed intention of the Legislature, we must give the word 'trustee' its broadest and fullest meaning. While the applicant was a bailee, and not technically a trustee, a bailment involves a trust in the broad sense of the term. The bailee is a custodian of property which clearly embraces a trust." 69 W.Va. at 431, 71 S.E. at 578–79.

The historical significance of *Hannis* is this Court's willingness to construe the statute in favor of disclosure to effectuate the legislature's objective that all real and personal property be assessed and taxed. Furthermore, *Hannis* concluded that the legislature did not intend the statutory designations of who must list property owned by another person to be viewed restrictively. In considering the term "trustee," the Court stated: "[W]e have a word here, which, taken in its broad, nontechnical sense, expresses the intent of the old statute, and makes the new one accord with it as well as the mandate of the Constitution requiring taxation of all property." 69 W.Va. at 432, 71 S.E. at 578.

■ We note that the information requested by the assessor is limited to real property or leasehold and royalty interests on real property located in Calhoun County in which the respondents have some ownership or operational interest with others.[3] They have some control of the property to the extent of these interests which they may share with third parties. Under W.Va.Code, 11–3–2, assessors have the right to have those in control or possession of property to report such interest where there is a "representative or fiduciary character" involved.[4]

■ Furthermore, it appears that assessors may inquire as to property of third

the possession or under the charge of a receiver or commissioner, by such receiver or commissioner; and (i) with respect to shares in a banking institution or national banking association, by the cashier, secretary or principal accounting officer of such banking institution or national banking association, as provided in section fourteen [§ 11–3–14] of this article." (Emphasis added).

3. The assessor sought the following information to update his records in regard to oil and gas properties located within the county:
"Names of lessors
Number of acres in lease
Number of wells
API number for each well, company well numbers
Names of oil & gas purchasers
Names & addresses of all royalty & override payees
Lease book reference
Location of Lease by district & local description

Name of agent
Name of operator
Contract number for gas sales
Farm number & tank numbers for oil production

"In addition we need to know the number of unoperated acres to hold, by district, in the county as well as API numbers of new wells not yet turned into the line. Part of the above information is to be used to make up a cross reference list to avoid double assessment of leaseholds as has happened on occasion in the past. Enclosed find an example of the information we need. Thank you for your cooperation."

4. The relevant portion of W.Va.Code, 11–3–2, is:
"The assessor or a deputy shall also obtain from such person separate, full and true statements ... a correct description of all property, real and personal, held, possessed or controlled by him as executor, administrator, guardian, trustee, receiver, agent, partner, at-

parties in the possession of another under W.Va.Code, 11–3–11, which enables the assessor to "require any person having possession, charge or control of any property in the county to permit him to examine the same in order that a fair valuation thereof may be made, and if any person refuse to do so, he shall forfeit not less than ten nor more than fifty dollars." [5] We do not consider the phrase "to examine" to be limited to a physical examination, but would enable the assessor, by way of a reasonable form, to have the property described in order to ascertain who owns it and its value.

■ If this Court some seventy-five years ago in *Hannis* could conclude that the term "trustee" could be expanded to include a bailee, we have no difficulty in saying that the respondents' lease relationships are of a representative or possessory character sufficient to impose upon them a duty to disclose their lessors and other reasonable information as the assessor has sought.

■ In view of the foregoing, we conclude that an assessor may make reasonable inquiry to parties in those relationships identified in W.Va.Code, 11–3–2 and –3, which include the lessees of real property or the owners of other interests in real property who may be asked reasonable questions relating to the interest of other persons in the property and the value of property itself. This principle follows not only from the foregoing statutes and *Hannis*, but also flows from our recognition of the taxability of a leasehold interest, which we stated in Syllabus Point 1 of *Great A & P Tea Co., Inc. v. Davis*, 167 W.Va. 53, 278 S.E.2d 352 (1981), to be:

> "The assessor of a county may assess the value of a leasehold as personal property separately in an amount such that when the value of the freehold subject to the lease is combined with the value of the leasehold the total reflects the true and actual value of the real property involved."

*See also In Re Maier*, 173 W.Va. 641, 319 S.E.2d 410 (1984).

In order for an assessor to make such a determination, it is apparent he needs to obtain relevant information from the lessee with regard to the leasehold and the lessor's interest.

## II.

### A.

■ The respondents have advanced several theories that they believe should obviate or bar the necessity of any disclosure as requested by the assessor. One is that the tax commissioner has already supplied the assessor with this information for the tax year 1983 in connection with the State-wide reappraisal program and, therefore, the question of the assessor's discovery power is now moot. The petitioners contend that the information sought was neither obtained by the tax commissioner nor provided to them. The information allegedly obtained by the tax commissioner and supplied to the assessor has not been made a part of the record in this proceeding and consequently no factual showing has been made that the assessor already has the information sought. We, therefore, cannot conclude the issue is moot. [6]

### B.

The respondents next challenge the assessor's authority on the ground that pub-

---

torney, president or accounting officer of a corporation, consignee, broker, or in any representative or fiduciary character...."

**5.** The complete text of W.Va.Code, 11–3–11, provides:

"If any person fail to furnish a proper list, or if the list furnished be, in the judgment of the assessor, incomplete or erroneous in any respect, the assessor shall proceed to list the property and assess its value, or to supply the omission and correct the errors, upon the best information he can obtain, and for that purpose the assessor may call upon any officer of the State, county or district for such proper information as it may be in his power to give, and may require any person having possession, charge or control of any property in the county to permit him to examine the same in order that a fair valuation thereof may be made, and if any person refuse to do so, he shall forfeit not less than ten nor more than fifty dollars."

**6.** We considered the mootness doctrine in *State ex rel. Ayers v. Cline*, 176 W.Va. 123, 342 S.E.2d 89 (1985), a case involving whether a circuit court can enjoin a sheriff's sale of real property

lic service corporations are assessed almost entirely by the Board of Public Works under W.Va.Code, 11–6–1, *et seq.* They point out that their primary reporting duty is to the Board of Public Works, with the limited exception of where they own real property and do not use it for public service purposes.

We agree with the respondents' general statement of the law in this area. In *Petition of Hull,* 159 W.Va. 363, 222 S.E.2d 813 (1976), this Court held that a county assessor lacked authority to assess ad valorem taxes on personal property that was currently being incorporated into the construction of an electric power generating facility.[7]

■ The respondents' argument is flawed, however, because it fails to distinguish between the power to assess and the authority of the assessor to engage in limited discovery to determine the existence of taxable property in their control in which third parties may have an ownership interest. Here, the assessor is not seeking to assess property used by the respondents in their public service operations. What the assessor is seeking is information concerning the respondents' nonutility operations in the county involving real property interests to determine the identity and interest of third parties who have a taxable interest in the same property. The fact that the legislature has given the tax commissioner and the Board of Public Works certain powers does not lead to the conclusion that the assessor has no authority to obtain information to fulfill his duties as was pointed out in *Shonk Land Co.*

■ Furthermore, W.Va.Code, 11–3–10, which was the linchpin of Syllabus Point 2 of *Shonk Land Co.,* states that "any person, firm or corporation, including public service corporations" who refuse to list their taxable property or refuse to answer "any question asked by the assessor or by the tax commissioner" may be subject to certain penalties. This provision gives a clear indication that an assessor may ask questions to a public service corporation about its taxable property located in the assessor's county.

## C.

■ An argument is made that the confidentiality provisions of W.Va.Code, 11–1A–23,[8] which relate to the confidentiality of property tax returns and prohibit the tax department, county assessors, or county commissions from disclosing returns sub-

for nonpayment of taxes until the court rules on the underlying merits of the taxpayer's challenge to the assessment. After we agreed to decide this issue, the circuit court decided the real property had been overvalued and the taxpayer urged us to dismiss the proceeding. We decided the case was not moot because of the recurrent nature and important public interest in resolving this tax revenue question and applied the rule established in Syllabus Point 1 of *State ex rel. M.C.H. v. Kinder,* 173 W.Va. 387, 317 S.E.2d 150 (1984):

"A case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review."

*See also Christie v. W.Va. Health Care Cost Review Authority,* 176 W.Va. 420, 345 S.E.2d 22 (1986); *Marshall v. Casey,* 174 W.Va. 204, 324 S.E.2d 346 (1984).

7. In Syllabus Points 1 and 2 of *Petition of Hull, supra,* we stated:

"1. All buildings and real estate used and occupied by any public service corporation for purposes directly related to the public service function of the corporation shall be assessed by the Board of Public Works, but if such buildings and real estate are not so used and occupied they may be assessed by the proper county authorities.

"2. The authority to assess all personal property of a public service corporation, regardless of the situs or use of such property, rests solely with the Board of Public Works."

No challenge has been made in this appeal to the circuit court's ruling as to the county assessor's authority to pose questions to a public service corporation relevant to ownership of nonutility real property situate within the county.

8. The relevant confidentiality language is found in W.Va.Code, 11–1A–23(a):

"Property tax returns and return information filed or supplied pursuant to this article and articles three, four, five and six ... shall be confidential and except as authorized in this section, no officer or employee of the state tax department, county assessors, county commissions and the board of public works shall disclose any return or return information obtained by him...."

ject to certain exceptions, are applicable. In this case, we do not deal with the disclosure of property tax returns, but with an attempt by the assessor to obtain information by way of a form. There is nothing to suggest that the assessor is intending to disclose the form, but merely to utilize it for his own internal purposes. We do not believe W.Va.Code, 11–1A–23(a), is applicable to the facts of this case.

Much the same answer applies to W.Va. Code, 11–1–4a, which permits the tax commissioner to publish statistical data, but precludes the making public of "the tax return, or any part thereof, of any individual, firm, or corporation, nor [disclosing] in any manner statistics or information concerning the personal affairs of any individual or the business of any single firm or corporation." Moreover, this section does not apply to the assessor.

The respondents' noncompetitive and antitrust arguments are not buttressed by any relevant authority. We stress again that the data sought to be obtained is limited in scope and is not sought in order to be made public, but is sought for internal use only.

For the reasons stated, the judgment of the Circuit Court of Calhoun County is reversed and the case is remanded for further proceedings.

Reversed and Remanded.