# CHARLESTON.

OHIO FUEL OIL CO. v. PRICE *et al.*

Submitted November 16, 1915.   Decided November 23, 1915.

1. TAXATION—*Property Subject to—Public Service Corporation.*

The personal property owned and operated by a public service corporation is assessable by the board of public works, without regard to the situs of such property, whether connected with or dissociated from the immediate use and operation of property employed by it in serving the public. And, when such property is assessed by the board of public works, the local assessing authorities can not lawfully alter or modify the assessment so made. It is final and conclusive, unless appealed from in the manner and within the time provided in §94, ch. 29, Code.   (p. 208).

2. SAME—*Assessment—Statute.*

By enacting chapter 29 of the Code, the legislature intended to devise and establish a symmetrical and harmonious general scheme or system for the assessment and taxation of personal and real property, to the end that each species of taxable property shall bear no more than its equal or just proportion of the governmental expenses; and for the administration and supervision of such scheme or system it appointed and designated the state tax commissioner and the board of public works, and on them conferred ample authority to supervise and administer such scheme or system; and due weight and credit must be accorded to the action of such officials in the performance of the respective duties so assigned to them, by all local assessing or taxing authorities.   (p. 210).

3. SAME—*Enforcement—Injunction.*

If such local authorities increase or modify any assessment or valuation made by the board of public works, and the taxes based on such increase or modification are sought to be enforced by the sheriff of any county by a sale of property levied on, equity will, at the suit of the owner, enjoin such enforcement, notwithstanding the failure of the owner to appeal from such re-assessment and revaluation in the manner and within the time allowed by chapter 29, Code.   (p. 215).

Appeal from Circuit Court, Roane County.

Bill by the Ohio Fuel Oil Company against J. P. Price and others.   From a decree for defendants, complainant appeals.

*Reversed.   Injunction perpetuated.*
77 W. Va.

*O. J. Wilkinson, Edward M. Burdette* and *Ryan & Boggess,* for appellant.

*.H. C. Ferguson* and *Harper & Baker,* for appellees.

LYNCH, JUDGE:

The appellant, Ohio Fuel Oil Company, a corporation organized and doing business under the laws of this state, by its bill complains that its property located in Roane county was twice assessed for taxation and taxed in that county, once by the board of public works, once by the county authorities. Price, sheriff, the county court, the board of equalization and review of that county and the individual members of such board were made defendants to the bill. It prayed and was awarded an injunction inhibiting defendant Price from selling such property levied on to enforce payment of the taxes alleged to have been illegally charged to plaintiff upon the valuation thereof unlawfully fixed by the board of equalization and review as amended by the county court. On final hearing on pleadings and proof, the injunction awarded was dissolved and the bill dismissed; and plaintiff brings the case here for review on appeal.

The company now owns and operates, and from 1910 to 1913 did own and operate, oil and gas properties in Lincoln, Roane and other counties in this state. While the property located in Lincoln then was and presumably still is operated for the production of gas, that in Roane is devoted to the production of oil for the private use and benefit of appellant. The gas produced from the Lincoln property appellant furnishes and sells at a profit to consumers applying therefor, subject to such rules and regulations as the operator from time to time may prescribe. As to the property devoted to public use, the Ohio Fuel Oil Company was, during the years mentioned, a public service corporation. It supplied gas as fuel for consumption by its patrons for heat and light. The service was general. Any one conveniently situated in respect to its property was entitled to receive and was furnished gas subject to such rules and regulations. Indeed, the charter of the company and nature of its business are conceded to be such as properly to characterize it as a corporation serving the

public in Lincoln county, or such of the residents thereof as apply for such service—a public utility corporation. And upon this theory the board of public works required the company, under the provisions of chapter 29, Code, as construed by such board, to return to it for assessment and levy all the taxable properties of every description, wherever located, owned by the company in this state. Such returns were made, and such properties assessed and charged with taxes, and the taxes paid by the company, for the years 1910 to 1913 inclusive, and distributed or credited to the county and district funds entitled thereto in the several counties wherein any part of such property was located, Roane county receiving and disbursing its proportionate part.

With knowledge of such assessment, taxation and distribution, so far as his county was interested, the assessor of Roane county did not list or assess the property owned by the Ohio Fuel Company located in that county for taxation therein. However, the board of equalization and review corrected his returns and entered such property, determined its value, and certified the result to the county court for the purpose of extending the levies fixed by such court. The assessment so made and certified by the board of equalization and review the county court reduced, for the alleged purpose of securing uniformity in the assessment of like properties owned and operated by other corporations engaged in that county in producing oil for their individual benefit. Plaintiff having paid the taxes charged against it upon the assessment made by the board of public work for previous years, and the county of Roane and the several subdivisions thereof having received and appropriated to public uses their several distributive shares or proportions of the taxes so assessed and paid, including the year 1913, without complaint or objection therefrom or any attempt on their part to re-assess such property, the question demanding an answer on this appeal is whether the board of public works, under whose control, for the purpose of taxation, chapter 29 of the Code places the property of all public service corporations engaged in business in this state, or the assessing and taxing authorities of Roane county had the exclusive right and power, for the pur-

poses of taxation, to deal with the property owned and operated by appellant in that county.

That the properties owned and operated by the company in Lincoln and Roane counties were devoted to purposes wholly different, one public, the other private, that such properties were not in any manner connected or associated except by ownership and management, and that the annual returns therefrom were disproportionate, are facts conceded and admitted, if indeed such concession were at all material.

While neither the board of public works nor the state tax commissioner is a party to this proceeding, the respective rights and duties thereof, under statutory enactments pertaining to taxation, indirectly are the subject of investigation herein; for the solution of the questions raised depends upon the construction of such statutes. By that process alone can the matters in issue be resolved. If the legislature constituted the board of public works as the sole medium for the assessment of the properties of public service corporations engaged in the performance of public functions in this state, and empowered such board to determine, within certain limitations and restrictions, what properties so owned and operated, in relation to their uses and locations, come within their jurisdiction, inferior assessing and taxing bodies must yield to the judgment of their superior and abide its determination upon the question of such jurisdiction.

That the legislature intended by such enactments to devise and establish a symmetrical and harmonious system of taxation, to the end that each kind of property shall bear no more than its equal and proportionate share of the governmental expenses, can not reasonably be doubted, whatever defects may unavoidably have escaped detection. As part of the system so devised, provision was made for a state tax commissioner, who was thereby charged with the duty of supervising the operation of the entire system, and, in an advisory capacity, to give aid and assistance to the board of public works. For these purposes, he is endowed with authority, ample and sufficient, to effectuate his supervisory and advisory functions.

By section 84 of chapter 29, "the owner or operator of every pipe line * * * within this state, used for the

transportation of oil or gas or water, whether such oil or gas or water be owned by such owner or operator or not'', is required to deliver to the state tax commissioner on or before April 1 of each year a return of all its property, in writing, for the use of the board of public works in making its annual assessments of such properties. So far as material to this inquiry, section 88 defines the property so to be returned by such owner or operator to be the number of miles of pipe line owned, leased or operated by it within this state, the size of the pipe composing such line, and the material of which the pipe is made; the length, size and true and actual value of such pipe line in each county of the state, including in such valuation the main, branch and connecting lines and separate valuations thereof; its pumping stations, machine and repair shops and machines therein, tanks, storage tanks and all other buildings, structures and appendages connected or used therewith, together with all real estate, other than its pipe line, owned or used by it in connection with its pipe line, including telegraph and telephone wires, with the valuation of the several species of property so designated. So far, it seems reasonably certain that the property to be so returned is property used by the owner or operator in connection with the pipe line owned or operated by it. But that required by other subdivisions is: '' (e) its personal property of every kind whatsoever, including money, credits and investments, and the amount thereof wholly held or used in this state, showing the amount and value thereof in each county; (f) an itemized list of all other real property within this state, with the location thereof; (g) the actual capital employed in the business of such owner or operator, the total amount of the bonded indebtedness of such owner or operator with respect to such line, and of indebtedness not bonded; and if such owner or operator be a corporation, its capital stock, the character, number and amount and the market value of such shares and the amount of the capital stock actually paid in, its bonded indebtedness and its indebtedness not bonded''; vesting the board of public works with the right to require such owner or operator to furnish any additional information the board may deem essential. None of the last three subdivisions limits the property, which such owner or operator is required to return,

to that used by it in connection with the pipe line in the transportation of oil or gas, except subdivision (g) and the only limitation it imposes is as to the bonded indebtedness in respect to such line. Otherwise, without any limitation as regards use or location connected with or independent of such pipe line, they include all personal property within this state belonging to such owner or operator. So far as disclosed, appellant included in its return made to the state tax commissioner, as required by section 88, all the items of property in every county of this state possessed, held, owned or operated by it, and the board of public works assessed and taxed it accordingly, except the real estate not used in connection with its pipe line if any such property the company had.

In the absence of any disclosure to the contrary, we must assume the return was satisfactory and contained all such items, and that the board performed the duties required of it by section 93 of the same chapter. That section requires the board, if satisfied with the return made, or if not satisfied therewith and it has otherwise procured satisfactory and sufficient information of the character, amount and location of the property of such owner or operator, to proceed not later than the first day of June of each year "to assess and fix the true and actual value of *all* property of such owner or operator hereinbefore required to be returned, so far as the said board has been able to ascertain the same, in each county through which  *  *  *  the pipe line of any such owner or operator runs, and in which any property to be assessed is. The section does not restrict that body to the return made by the owner or operator. It may institute an independent investigation as to the correctness of its return, take and consider testimony, and prosecute such inquiry as it may deem necessary for the purpose of bringing under its control any property of the owner or operator, whatever its character or location, if within the meaning and purpose of other sections cited. And when so found and its value assessed, the assessment and valuation "shall be final and conclusive", unless appealed from as provided by the section, and certified to the auditor and by him to the county court of each county in which any of the property lies.

To us it seems clear that the property owned and operated by the Ohio Fuel Oil Company in Roane County, except real estate if any it owned, although devoted exclusively to the production of oil and dissociated from and not used in connection with the pipe line owned and operated by the company in Lincoln county, was properly returned to the state tax commissioner and assessed by the board of public works, and that such assessment and valuation were final and conclusive, because not appealed from.   Such assessment and valuation precluded re-assessment and re-taxation by the assessor, the board of equalization and review and the county court of Roane county.

This conclusion is further re-enforced by the provisions of section 106, saying "all buildings and real estate owned or held by such owner or operator, and used or occupied for any purpose immediately connected with the property (returned and assessed), shall be included in such assessment by the board of public works; but all *real estate* owned or held by any such owner or operator, and not used or occupied for purposes immediately connected with the property, shall be assessed as otherwise provided in this chapter". This section, it will be noted, relates to real and not personal estate. It virtually excludes the personal property of the owner or operator. Though declaring what the county authorities may do as regards real estate, it is silent as to their right to assess the personal property of a public service corporation whose property is returned for assessment by the owner or operator to and assessed by the board of public works. The statutory authority to deal with certain specific property by taxing bodies for the purposes of taxation or otherwise, generally excludes authority to deal with that not specified, agreeably to the rule of construction, general in its application, that "where a statute enumerates the things upon which it is to operate it is to be construed as excluding from its effect all those not expressly mentioned", subject to certain well defined limitations not applicable here.   36 Cyc. 1122.

Whether appellant owned any real estate in Roane county is a question not answered by the record.   If it did, such property was assessable in that county, because not connected with the Lincoln county property owned and operated therein by

it. But we may assume that all its property in Roane county was exclusively personal property, consisting of oil wells, casing, tubing, derricks, pipes and similar species of property used in operating lands held under leases for oil and gas purposes, the character of the property being such as chapter 29 contemplates and requires to be returned by public service corporations to the board of public works through the state tax commissioner, and by such board assessed for taxation. As we read and construe it, the plain intendment of the statute was to confer authority on the board of public works to ascertain and assess for taxation all the taxable personal property owned by public service corporations or public utility companies, whether unincorporated or not, and whether used in conjunction with or dissociated from the different public functions performed by them, and such real estate so connected and used; and that, as to such ascertainment and assessment, the action of the board is final and conclusive, unless appealed from, and binds all inferior taxing bodies, and precludes re-assessment by them of the property so previously assessed; though but for the jurisdiction of the board under the provisions of the statute such property otherwise would have been assessable by the county taxation authorities. To us this conclusion seems inevitable under any reasonable construction of the statutory provisions. They are mandatory, not merely permissive, and were plainly intended to constitute one complete, consistent and harmonious and general system of state taxation, with one administrative head and taxing body for the assessment and taxation of certain properties, and to permit the assessment by county authorities only of that property assessable by such inferior assessing bodies. Chapter 29 of the Code gives expression to the legislative intent, as we have interpreted such intent; and we have been unable to find any provision of the chapter which manifests a different intent. The legislature vested the state tax department with administrative or governmental functions as to the taxation of public service corporations doing business in this state; and with the performance of such functions, or with the result or effect of its action, local assessing bodies can not be permitted to interfere, for the purpose of withdrawing from its control property assessed and

valued by it, or of re-assessing such property as the board of equalization and review of Roane county undertook to do.

But it is contended that, because section 77 of chapter 29 requires all corporations doing business in this state, except (among others) pipe line companies, to report their property to the assessor for assessment, it was the duty of the assessor of Roane county to list, assess and value the property of the Ohio Fuel Oil Company located in that county. The premises do not warrant that conclusion. It is a *non sequitur*. And counsel err in saying the words "pipe line" were not intended to and do not define or include pipe line companies. The exception embraces "railroad, foreign insurance and express companies, telephone companies, pipe line and car line companies", all the descriptive words referring to the companies required to report their properties to the board of public works for assessment and valuation.

Has equity jurisdiction to enjoin collection of the taxes erroneously charged against the personal property of appellant upon the assessment and valuation ascertained and fixed by the board of equalization and review as modified by the county court of Roane county? That inquiry defendants would have us answer in the negative, upon the authority of *Williams* v. *County Court*, 26 W. Va. 488. That case, however, involved, not, as in this case, taxes illegally assessed against one tax-payer, but taxes assessed against all the tax-payers of the county for county purposes; and the decision in the main was predicated upon the theory that where all the tax-payers are equally affected by the illegal taxation, and none of them suffers any injury peculiar to himself, public policy prevents resort to the injunctive process. But the decision goes further, and holds that where the tax is imposed not on all but a part of the tax-payers, and affects only those who join in the suit, or who sue for and on behalf of themselves and others similarly situated or affected, equity will grant relief by enjoining taxation averred and proved to be illegal. Nor do we perceive in what respect *Wingrove* v. *Public Service Commission*, 74 W. Va. 190, militates against the views herein expressed. The sole question there involved was whether the White Oak Fuel Company, a corporation engaged in the mining and marketing of coal and using

electricity for lighting its mines and furnishing electric motive power and electricity to light the town of Scarbro, a small mining town or village, could be required by mandamus to furnish electrical current to all persons applying therefor under reasonable rules and regulations and conveniently situated with relation to its service lines; and the writ was awarded. The case did not involve assessment or taxation, though in argument it was suggested on behalf of the coal company that if generally required to supply electricity to private consumers it possibly might be classified as a public service corporation.

The further proposition argued for defendants, that, as section 63 requires the assessment of all personal property not exempt from taxation, in the county wherein it is located, the taxable personal property of appellant located in Roane county ought to have been assessed in that county, is untenable. That conclusion can not be accepted; because, if sound, much property clearly and indisputably assessable by the board of public works could not be assessed by it. It would withdraw from such control all the personal property of public service corporations located in the different local tax assessment jurisdictions. That result, if allowed, would destroy the whole tax system devised by the legislature. That position is apparently untenable and indefensible.

Though cited by defendants, *Railroad Co.* v. *Morris,* decided October 19, 1915, does not sustain a conclusion adverse or hostile to that reached in this case. Rather it confirms our conclusion.

From what has been said, it is apparent that the decree appealed from is erroneous and must be reversed, the injunction reinstated and perpetuated; and such will be the order entered here.

*Reversed. Injunction perpetuated.*