459 S.E.2d 352

**COLUMBIA GAS OF MARYLAND, INC., a Delaware Corporation, Columbia Gas of Kentucky, Inc., a Kentucky Corporation, Columbia Gas of Pennsylvania, Inc., a Pennsylvania Corporation, Columbia Gas of Ohio, Inc., an Ohio Corporation, Commonwealth Gas Services, Inc., a Virginia Corporation, Petitioners Below, Appellants,**

v.

**The BOARD OF PUBLIC WORKS OF the STATE OF WEST VIRGINIA, Respondent Below, Appellee.**

No. 22515.

Supreme Court of Appeals of West Virginia.

Submitted May 10, 1995.

Decided June 15, 1995.

---

Charles R. McElwee, David K. Higgins, Paul G. Papadopoulos, Robinson & McElwee, Charleston, Allan E. Roth, Sr. Atty., Columbia Gas Distribution Companies, Columbus, OH, for appellants.

Barry L. Koerber, Asst. Atty. Gen., Charleston, for appellee.

WORKMAN, Justice:

Appellants are five natural gas local distribution companies who seek reversal of an order of the Circuit Court of Kanawha County entered on February 28, 1994, which requires them to be assessed for ad valorem taxes by Appellee, the Board of Public Works of the State of West Virginia (hereinafter referred to as the "Board"). Appellants argue that since they do not operate as public utilities in West Virginia, they are not subject to the provisions of West Virginia Code § 11-6-1 (1991), and are therefore not required to report to the Board for taxation purposes. After examining this issue, we affirm the decision of the circuit court.

Appellants are foreign corporations that operate as natural gas utilities outside the State of West Virginia. Each individual Appellant is a local distribution company which distributes and sells natural gas at the retail level to residents and businesses outside this state. None of the Appellants sell or otherwise transfer gas to other entities within this state. Additionally, none of the Appellants is subject to the jurisdiction of the West Virginia Public Service Commission ("PSC"). Instead, each Appellant is subject to the jurisdiction of the state utility commission in the respective state in which it distributes and sells natural gas.

Beginning in November 1989, Appellants began storing natural gas in gas storage fields located in various counties throughout West Virginia.[1] The parties agree that other than this stored natural gas, Appellants do not own any other property located in this state. At the insistence of the Board, Appellants filed returns reflecting the amount of natural gas stored throughout West Virginia on December 31, 1989, under authority of West Virginia Code §§ 11-6-1 to -26 (1991 & Supp.1994). Appellants filed these returns under protest, reserving their right to contest the assessments on the basis that the specific county assessors[2] for the counties in which the gas is stored, and not the Board, have jurisdiction to tax Appellants' stored natural gas. See W.Va.Code § 11-3-12 (1991).

Following an exhaustion of their administrative remedies,[3] Appellants filed petitions seeking relief from the assessments made by the Board with the circuit court on February 28, 1991. By order dated February 28, 1994, the circuit court ruled that Appellants are public service corporations within the meaning of West Virginia Code § 11-6-1(a)(10) and therefore, their stored natural gas is reportable to and taxable by the Board. Appellants seek a reversal of that order.

At the outset, we note that Appellants do not dispute that they are subject to ad valorem taxation. The only issue raised is whether the Board or the county assessor is the proper entity to assess their stored natural gas for taxation purposes. The statutory language which addresses which property owners or operators are required to report to the Board for assessment is found in West Virginia Code § 11-6-1(a) and states:

1. This was due to a change in federal law which eliminated the "middleman" in gas sales and permitted local gas distribution companies such as Appellants to purchase their gas supplies directly from producers rather than from natural gas pipeline companies, as had previously been the practice. See infra note 12.

2. Appellants have filed returns with the various county assessors of each respective county in which natural gas was stored on July 1, 1990.

3. Appellants protested the Board's assessment of their stored gas in writing and by appearing at a meeting held by the Board on November 28, 1990. The Board rejected Appellants' protest according to the stipulation of facts included as a part of the record in this case.

On or before the first day of May in each year a return in writing shall be filed with the board of public works: (1) By the owner or operator of every railroad, wholly or in part within this state; (2) by the owner or operator of every railroad bridge upon which a separate toll or fare is charged; (3) by the owner or operator of every car or line of cars used upon any railroad within the state for transportation or accommodation of freight or passengers, other than such owners or operators as may own or operate a railroad within the state; (4) by the owner or operator of every express company or express line, wholly or in part within this state, used for the transportation by steam or otherwise of freight and other articles of commerce; (5) by the owner or operator of every pipeline, wholly or in part within this state, used for the transportation of oil or gas or water, whether such oil or gas or water be owned by such owner or operator or not, or for the transmission of electrical or other power, or the transmission of steam or heat and power or of articles by pneumatic or other power; (6) by the owner or operator of every telegraph or telephone line, wholly or in part within this state, except private lines not operated for compensation; (7) by the owner and operator of every gas company and electric lighting company furnishing gas or electricity for lighting, heating or power purposes; (8) by the owner or operator of hydroelectric companies for the generation and transmission of light, heat or power; (9) by the owner or operator of water companies furnishing or distributing water; and *(10) by the owner or operator of all other public service corporations or persons engaged in public service business whose property is located wholly or in part within this state.* W.Va.Code § 11–6–1(a) (emphasis supplied).

The circuit court relied on subsection 10 of West Virginia Code § 11–6–1(a) in conclud-

ing that the Board was the proper entity to assess Appellants' stored gas for ad valorem taxation. In short, the circuit court concluded that since Appellants qualified as public service corporations [4] and had property located in this state, they were therefore subject to taxation by the Board under West Virginia Code § 11–6–1(a)(10).[5] Appellants argue that only those public service corporations who actually operate as such within this state fall within the intent of West Virginia Code § 11–6–1.[6]

The real concern here, as acknowledged by Appellants, is the date on which the stored gas is assessed. Pursuant to West Virginia Code § 11–6–1, assessments are made on December 31st of each year. West Virginia Code § 11–3–12, the alternative statute under which Appellants seek to be taxed, provides July 1st of each year as the date for assessment purposes. Appellants represented to the Court that the amount of their stored gas is substantially higher at the end of the year due to increased storage because of greater demand during the winter months. Accordingly, if they were assessed pursuant to the local scheme, Appellants would stand to incur a decreased amount of taxes as compared to the statewide method of assessment.

To support their position, Appellants rely on two cases. First, they cite *West Penn Power Co. v. Board of Review and Equalization of Brooke Co.*, 112 W.Va. 442, 164 S.E. 862 (1932), a decision which involved review of a county board's assessment of an electric plant owned jointly by two out-of-state power companies. *See* W.Va.Code § 11–3–25 (1991). Appellants contend that *West Penn* is premised on the "assumption" that non-West Virginia utilities are required to report to the county assessor in which their property is located. This assumption,

---

**4.** The term "public service corporation" is not statutorily defined.

**5.** We reject Appellants' contention that subsection 7 of West Virginia Code § 11–6–1(a) is the more logical basis for taxation of Appellants by the Board since the emphasis in that subsection is on the *furnishment* of gas or electricity, rather than the storage of such items. In contrast,

subsection 10 focuses on the existence of property belonging to a public service corporation, as opposed to the utilization of such property for the generation of power.

**6.** There is no dispute regarding the fact that Appellants do not operate within this state as a public service corporation.

however, is just that, as no challenge appears to have been made in *West Penn* regarding the Board being the proper taxing authority. Thus, the *West Penn* decision does not stand for the proposition that the local assessor is the proper authority to assess and tax a non-West Virginia public service corporation.

Appellants find significant the language included in *West Penn* indicating that neither West Penn Power Company nor Ohio Power Company "in operation of their jointly owned plant, ... occupy the status of regulated utilities." 112 W.Va. at 445, 164 S.E. at 863. The reason these two power companies were determined not to be regulated utilities, however, was because of the fact that "[t]hey [we]re manufacturers selling the output of this plant to other companies." *Id.* This designation of the power companies' non-regulated utility status was factually limited to their operation of a specific plant for wholesale, rather than retail purposes. *Id.* Moreover, the recognition of the power companies not qualifying as regulated utilities under the facts of *West Penn* is *not* the equivalent of a finding that a non-West Virginia public service corporation is excluded from the purview of West Virginia Code § 11–6–1(a)(10).[7]

■ The second case upon which Appellants rely is the decision in *Ohio Fuel Oil Co. v. Price,* 77 W.Va. 207, 87 S.E. 202 (1915), in which this Court addressed whether the Board or the local taxing authorities of Roane County had the exclusive right to tax the property of Ohio Fuel Oil Company. In syllabus point one of *Ohio Fuel,* we held that

> The personal property owned and operated by a public service corporation is assessable by the board of public works, without regard to the situs of such proper-

ty, whether connected with or disassociated from the immediate use and operation of property employed by it in serving the public. And, when such property is assessed by the board of public works, the local assessing authorities cannot lawfully alter or modify the assessment so made. It is final and conclusive, unless appealed from in the manner and within the time provided in § 94, ch. 29, Code [now W.Va. Code § 11–6–12 (1991)].

77 W.Va. at 207, 87 S.E. at 202.

Although the *Ohio Fuel* decision involved an in-state public service corporation and as such, did not involve the question presented to this Court, Appellants rely heavily on the fact that *Ohio Fuel* thricely refers to the concept of public service corporations engaged in or doing business in this state in connection with the concept of taxation by the Board. *See id.* at 209–14, 87 S.E. at 203–05. However, just as the inapposite factual nature of *West Penn* prevents that case from being dispositive regarding the issue sub judice, the absence of a foreign public service corporation in *Ohio Fuel* similarly prevents that decision, or in actuality, its dicta, from controlling the outcome of this case. Moreover, given the involvement of an in-state public service corporation in *Ohio Fuel,* the inclusion of "doing business" language in that decision does not require the conclusion that public service corporations not doing business in this state, but owning property subject to taxation in this state, were intended to be excluded by such language.[8]

Regardless of the questioned language in *Ohio Fuel,* however, we must first look to the statutory language at issue. While West Virginia Code § 11–6–1 does not define whether

---

7. Appellants' reliance on the non-regulated utility status accorded in *West Penn* is of little value since the record in this case contains a stipulation that Appellants are not regulated by the West Virginia Public Service Commission since their public service work is performed in other states. Furthermore, the issue of regulation does not resolve the issue of taxation that is presently before us.

8. Included in West Virginia Code § 11–3–12, the statute under which Appellants seek to be assessed, is the language "or owning property subject to taxation in this state[.]" Thus, it appears

that ownership, in addition to doing business in this state, permits taxation to occur. Although the language regarding property ownership is found in West Virginia Code § 11–3–12, the interrelated nature of this statute with West Virginia Code § 11–6–1 (i.e. W.Va.Code § 11–3–12 exempts certain entities such as public service corporations and refers them to the Board for taxation via W.Va.Code § 11–6–1) permits us to "borrow" the "ownership" language found in West Virginia Code § 11–3–12 for purposes of analysis.

the term "public service corporation" as used in subsection 10 was limited to West Virginia public service corporations,[9] reference to the alternative statute under which Appellants claim entitlement to be assessed at the local level provides limited, but helpful, elucidation. Appellants maintain that they should be taxed under West Virginia Code § 11–3–12. That statute provides, in pertinent part:

Each incorporated company, foreign or domestic, having its principal office or chief place of business in this state, or owning property subject to taxation in this state, except railroad, telegraph and express companies, telephone companies, pipeline, car line companies *and other public utility companies* ... shall annually, between the first day of the assessment year and the first day of October, make a written report....

W.Va.Code § 11–3–12 (emphasis supplied).

Thus, the statute which permits local assessment of corporate property clearly exempts that property owned by public utility companies.[10] The obvious reason for this exception was because the Board, pursuant to West Virginia Code § 11–6–1(a), is the express taxing authority for such companies. *Ohio Fuel* expressly recognized this precept in noting that those entities expressly carved out from taxation at the local level in West Virginia Code § 11–3–12 are the same "companies required to report their properties to the board of public works for assessment and valuation." 77 W.Va. at 215, 87 S.E. at 206.

■ As Appellee explains, to permit assessment of Appellants' stored gas dependent upon the location in which it is stored would eviscerate the objective in establishing the Board in the first instance. The intent in devising a specific system of taxation, that included the Board, was addressed in *Ohio Fuel:*

By enacting chapter 29 of the Code [now chapter 11] *the legislature intended to devise and establish a symmetrical and harmonious general scheme or system for the assessment and taxation of personal and real property,* to the end that each species of taxable property shall bear no more than its equal or just proportion of the governmental expenses; and for the administration and supervision of such scheme or system it appointed and designated the state tax commissioner and the board of public works, and on them conferred ample authority to supervise and administer such scheme or system...."

77 W.Va. at 207, 87 S.E. at 202, Syl.Pt. 2, in part (emphasis supplied).

That the goal of a "symmetrical and harmonious system of taxation" might be undermined by permitting local assessment is not difficult to comprehend. 77 W.Va. at 210, 87 S.E. at 204 and Syl.Pt. 2, in part. Due to the inherent opportunity for differing valuations at the local level,[11] we have no doubt that substantially varying assessments could result from localized assessment. Moreover, as Appellee observes, permitting Appellants to be taxed locally would have a discriminatory impact on in-state utilities as their assessment occurs at a time of year when gas inventories are reportedly higher, whereas out-of-state utilities would benefit through mid-year assessment when inventories are substantially lower.[12]

Appellants cite Appellee's practice of not taxing three foreign electric companies who

---

**9.** While certainly not definitive on the issue of statutory interpretation before us, we further observe that the statutes dealing with the PSC do include the modifying language "in this state" in contrast to the language of West Virginia Code § 11–6–1(a). *See* W.Va.Code § 24–2–1 (1992).

**10.** Appellants propose that only West Virginia public utility companies are exempted from taxation at the local level by West Virginia Code § 11–3–12. This contention, while certainly beneficial to Appellants' position, is offered without any support.

**11.** Even Appellants admit in their reply brief that "uniform valuation is achieved for rate-making purposes" through the statewide system of assessment contemplated by West Virginia Code §§ 11–6–1 to –26.

**12.** Appellee contends that it is not attempting to increase its taxing jurisdiction, but rather to maintain the status quo. Prior to changes in federal law, Appellee assessed the stored gas which Appellants purchased from Columbia Gas Transmission Corporation ("TCO"), an interstate natural gas pipeline company. Appellee seeks to continue assessing the stored gas, which Appellants now are able to obtain without the use of TCO as a middleman.

purchase power generated in-state for out-of-state use as analogous and compelling administrative precedent that should be accorded great weight by this Court. Specifically, Appellants argue that Appellee's practice of allowing local assessors to tax Ohio Power Company, Duquesne Light Company, and West Penn Power Company[13] supports their position that natural gas stored in West Virginia for use outside this state should be similarly treated. Appellee candidly admits ignorance regarding why these three particular utility companies have been permitted to be taxed at the local level rather than by the Board.[14] Further, Appellee states that "[t]he assessment methodologies used by the local assessors and the Board vis-a-vis electric power companies are substantially identical, so there was (and is) no economic incentive for the Board or the power companies to seek a change." Moreover, Appellee concedes that "[t]he Board's inconsistent exercise of jurisdiction over electric power companies is acknowledged and will be resolved to conform to the result reached in this case."

■ We are not persuaded by Appellants' argument that the Board's practice of permitting three foreign electric companies to be assessed locally compels a concurrent result in this case.[15] An erroneous application of a statute, no matter what the duration of its application, does not create binding precedent for this Court. "Interpretations of statutes by bodies charged with their administration are given great weight *unless clearly erroneous.*" Syl.Pt. 4, *Security Nat'l Bank & Trust Co. v. First W.Va. Bancorp., Inc.,* 166 W.Va. 775, 277 S.E.2d 613 (1981), *appeal dismissed,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 (1982) (emphasis supplied).

Appellee contends that the "wholly or in part" language of subsection 10 of West Virginia Code § 11–6–1(a), which states that the Board has jurisdiction over "the owner or operator of all other public service corporations or persons engaged in public service business whose property is located wholly or in part within this state[,]" "would be completely unnecessary if only locally regulated utilities were taxable, as such utilities would *always* own property in West Virginia." Appellants offer no alternative suggestion for the inclusion of this statutory language.

■ Upon analysis, we cannot accept Appellants' contention that West Virginia Code § 11–3–12 is the appropriate statute under which their stored gas should be taxed when that statute expressly exempts all public utilities without reference to whether such utilities are operating in-state or out-of-state. Additionally, the language found in West Virginia Code § 11–6–1(a)(10) that provides for taxation of public service corporations "whose property is located wholly or in part within this state" suggests that it is the ownership of property rather than the doing of business in this state that provides the key to taxation under West Virginia Code § 11–6–1(a)(10).[16] Accordingly, we conclude that pursuant to West Virginia Code § 11–6–1(a), the West Virginia Board of Public Works has jurisdiction to assess and collect ad valorem taxes from foreign public service corporations that own property situated within West Virginia, but do not operate as public utilities in this state.

Based on the foregoing, the decision of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

---

13. This has reportedly been the practice since at least 1971 and has taken place with the Board's knowledge.

14. In response to the non-taxation of the three foreign power companies, Appellee cites VEPCO as an example of an out-of-state electric company that *is* taxed by the Board. This example is of no precedential value to the Board from an administrative law analysis, as Appellants observe, due to the fact that the Board's taxation of VEPCO began in the late 1980's, contemporaneous to the issue that is before this Court.

15. In response to Appellants' argument regarding the localized taxation of the three foreign electric companies, Appellee stresses that 17 other similarly situated out-of-state gas companies are currently being taxed by the Board. Such a fact, however, does not respond to the differing treatment allowed the foreign electric companies, nor does it provide administrative precedent given the contemporaneous nature of such taxation to the cases at bar. *See supra* note 14.

16. *See supra* note 8.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J., and FOX, Judge, sitting by temporary assignment.